IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LORISA PINEDA, individually and on behalf of all others similarly situated**<br>Plaintiff,<br><br>v.<br><br>**LAKE CONSUMER PRODUCTS, INC.**<br>Defendant. | Civil No. 5:24-cv-1074-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                  December 5, 2024

## I.    INTRODUCTION

Lorisa Pineda ("Plaintiff") has filed a Class Action Complaint against Lake Consumer Products, Inc. ("Defendant"), alleging a variety of torts relating to her purchase of Defendant's coal tar shampoo products. Plaintiff alleges that the shampoo was contaminated with benzene—a chemical that she alleges has been labeled a human carcinogen. Defendant moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively. While Plaintiff can sufficiently allege a cognizable injury, she fails to allege this injury with the particularity needed to withstand Defendant's Motion. Plaintiff's Complaint alleges that test results show the presence of benzene in several of Defendant's products, but she fails to offer any connection between the test results and the products that she alleges that she purchased. Because Plaintiff lacks standing, Defendant's Motion to Dismiss will be granted. However, Plaintiff will be given leave to amend her Complaint.

1

## II.  FACTUAL BACKGROUND

Defendant Lake Consumer Products, Inc. is a business that manufactures Coal Tar Shampoo Products. *See* Pl.'s Compl. ("ECF No. 1") at ¶ 6. Among these products are MG217 Psoriasis Extra Strength, MG217 Psoriasis Medicated Conditioning 3% Coal Tar Shampoo, and MG217 Dandruff Therapeutic Shampoo.[1] *See id.* at ¶ 1. Plaintiff alleges that she purchased "at least one or more" of these products, and specifically she alleges that she purchased MG217 Medicated Conditioning 3% Shampoo in July 2023 and February 2023. *Id.* at ¶ 6.

Plaintiff alleges that Defendant's Coal Tar Shampoo Products contain benzene. *See id.* at ¶¶ 2, 6. She alleges that test results indicated that benzene was present in Defendant's Coal Tar Shampoo Products in an amount between 5.64ppm and 10.30ppm. *Id.* at ¶ 21. According to Plaintiff, benzene is a human carcinogen and can cause a variety of harmful health effects. *See id.* at ¶¶ 12-13. Plaintiff claims that there should not be any benzene present in Defendant's products and that the contamination was avoidable. *Id.* at ¶¶ 16, 22. She alleges the amount of benzene is present in "dangerously high." *Id.* at ¶ 2. Also, she alleges that "she would not have paid money" for Defendant's products had she known about the presence of benzene. *Id.* at ¶ 6.

Plaintiff filed her Complaint on March 12, 2024, alleging seven claims: (i) Breach of Express Warranty; (ii) Breach of Implied Warranty; (iii) Fraud; (iv) Negligent Misrepresentation and Omission; (v) Violation of Consumer Protection Law; (vi) Negligence; (vii) Unjust Enrichment. Defendant moved to dismiss Plaintiff's Complaint on May 31, 2024. *See* Def.'s Brief in Supp. of Mot. to Dismiss ("ECF No. 18").

---

[1] In her Complaint, Plaintiff refers to these products collectively as the "Coal Tar Shampoo Products." *See* ECF No. 1 at ¶ 1.

### III.    STANDARD OF REVIEW

Defendant has moved to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).[2] A motion made under Fed. R. Civ. P. 12(b)(1) alleges a lack of subject matter jurisdiction. The judicial power "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (citing U.S. CONST. art. III, § 2). To bring a suit, a party must have standing to do so. *See id.* ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood."). "To establish Article III standing, a plaintiff bears the burden of showing three irreducible elements. He must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.* ("*Associated Builders*"), 81 F.4th 279, 287 (3d Cir. 2023) (internal citation omitted). Further, "a plaintiff must demonstrate standing for each claim that he seeks to press and for each form of relief that is sought." *Id.* (internal quotation marks omitted). "In a class action, the class's standing turns on the named plaintiffs' standing." *Lewis v. Gov't Employees Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024). Plaintiff must demonstrate that she has sufficient standing for her claims to proceed on behalf of an alleged class.

The first prong of the standing inquiry requires a plaintiff to have suffered an injury in fact. This is "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Associated Builders*, 81 F.4th at 287. "To be concrete, an injury must be real, and not abstract." *Id.* This first prong is the "first and foremost of

---

[2] Because standing is a threshold issue, the Court does not reach the merits of Defendant's Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6).

standing's three elements." *Lewis*, 98 F.4th at 459.

## IV. DISCUSSION AND ANALYSIS

### a. Plaintiff Has Failed to Allege that She Has Standing to Bring Her Claims

#### i. Plaintiff Has Alleged an Injury Under the Benefit-of-the-Bargain Theory

First, Defendant argues that Plaintiff's Complaint should be dismissed because she lacks standing. Specifically, Defendant argues that Plaintiff has not alleged a sufficient injury-in-fact that entitles her to relief. Defendant is correct that without an injury, this Court would be compelled to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction. *See Taliaferro v. Darby Twp. Zoning Bd.*, 458 F. 3d 181, 188 (3d Cir. 2006) ("Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed."). But, here, Plaintiff's Complaint does not fall for lack of cognizable injury.

The Third Circuits recent opinion in *Huertas v. Bayer US LLC*, 120 F.4th 1169 (3d Cir. 2024), is instructive. *Huertas* was also a products liability case concerning products alleged to be contaminated with benzene. *See id.* at 1172-73. There, the defendant recalled several of its products, and the plaintiffs sought "compensation for economic losses they allegedly suffered from purchasing products that they claim are worth less than the uncontaminated products for which they bargained." *Id.* at 1172. The Third Circuit held that the plaintiffs had sufficiently alleged that they had suffered an economic injury and had standing to bring their claims. *See id.* at 1174-78. The plaintiffs successfully argued their injury under "the benefit-of-the-bargain theory." *Id.* at 1174-75 ("[Plaintiffs] paid full purchase price for products free of contaminants and dangerous substances, but received products that were defectively manufactured with harmful levels of benzene causing them to be adulterated and therefore worthless." (internal citations and quotation marks omitted)); *see also In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices*

4

*and Liab. Litig.* ("*J&J*"), 903 F.3d 278, 283 (3d Cir. 2018) ("Under the benefit of the bargain theory, a plaintiff might successfully plead an economic injury by alleging that she bargained for a product worth a given value but received a product worth less than that value. The economic injury is calculated as the difference in value between what was bargained for and what was received.").

In *Huertas*, the plaintiffs "bargained for [a] product free of contaminants and dangerous substances, but instead received product that were unmerchantable and unfit for use, as they were adulterated and contained harmful levels of benzene." *Huertas*, 120 F.4th at 1175 (cleaned up) (internal citations omitted). Plaintiffs alleged that this contamination "rendered their products worthless." *Id.* The Third Circuit did not determine whether the products were in fact worthless, *see id.* at 1175 n.9, however the court did determine that the products were "necessarily worth less than the product when properly manufactured." *Id.* at 1175 ("[I]f a product contains a manufacturing flaw so severe that it cannot be used, it is not worth the full price purchasers paid with the understanding they would be able to use all of the product."). The products there "contained a defect that rendered them unusable," so "the products were worth less than their full purchase price." *Id.* at 1175-76. This provided the basis for the economic injury which conferred standing on the plaintiffs.

Here, Plaintiff alleges that Defendant's shampoo products contained a harmful contaminant and that rendered the product worth less than she had paid for it. *See* ECF No. 1 at ¶ 6. *Huertas* establishes that this is a sufficient injury to confer standing on Plaintiff. *See id.* at 1177 (concluding "that contaminated products are worth less than uncontaminated products."). Plaintiff alleges here that she purchased Defendant's product, MG217 Psoriasis Medicated Conditioning 3% Coal Tar Shampoo, on two occasions; she also alleges that she may have purchased "at least one or more"

5

of Defendant's other products, on other occasions—but this is unspecified. *See* ECF No. 1 at ¶ 6. She alleges that Defendant's product contained benzene—a chemical that she alleges is known to be a human carcinogen. *See id.* at ¶¶ 12, 21. She also alleges that "there should not be any benzene in Coal Tar Shampoo Products" and that benzene is removable from coal tar through a refinement process. *Id.* at ¶¶ 16, 22. Plaintiff has alleged a sufficient economic injury because she alleges that the presence of benzene caused Defendant's product to be unfit for its intended use and worth less than what bargained for.

Although *Huertas* involved a voluntary recall of the defendant's benzene-containing products, *see* 120 F.4th at 1172, the Court does not read the Third Circuit opinion so narrowly to only recognize an injury within a fact pattern where a product manufacturer initiates a recall of their product. The law recognizes an economic injury in circumstances such as this because "contaminated products are worth less than uncontaminated products." *Id.* at 1177. In *Huertas* the defendant instructed consumers to cease use of the contaminated products and to throw them away. *See id.* at 1178. While the allegations here do not include this exact point, Plaintiff has sufficiently alleged that the presence of benzene in Defendants shampoo product renders the shampoo unfit for use and worth less than what she had bargained for. *See* ECF No. 1 at ¶¶ 4-5, 12, 21-22.

> ii. **Plaintiff Fails to Allege Her Injury is Particularized Enough to Survive Defendant's Motion to Dismiss**

While Plaintiff can show that she suffered a cognizable injury, she fails to allege this injury with sufficient particularity. Plaintiff must plausibly allege that *her* product was defectively manufactured—or that it contained benzene. *See Huertas*, 120 F.4th at 1178 (citing *J&J*, 903 F.3d at 289); *see also id.* at 1174 ("While the plausibility standard does not impose a probability requirement, it does demand more than a sheer possibility that a defendant has acted unlawfully." (citation omitted)). The totality of Plaintiff's allegations as to this point of "particularity" is

6

contained in paragraph 21 of her Complaint: "Defendant's Coal Tar Shampoo Products did in fact contain benzene. Testing, for instance, reveals that Defendant's Coal Tar Shampoo Products contain benzene between 5.64ppm and 10.30 ppm." ECF No. 1 at ¶ 21. This term—"Coal Tar Shampoo Products"—has been defined by Plaintiff in her Complaint to include several of Defendant's products under the brand MG217 including (1) MG217 Psoriasis Extra Strength, (2) MG217 Psoriasis Medicated Conditioning 3% Coal Tar Shampoo, and (3) MG217 Dandruff Therapeutic Shampoo. *See id.* at ¶ 1.

Plaintiff's allegation of particularity is based on the theory of representative testing. *See* Pl.'s Notice of Supp. Auth ("ECF No. 28") at 2. The Third Circuit has been fairly lenient in terms of allowing representative testing, as Plaintiff "need only demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Huertas*, 120 F.4th at 1178 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Practically, this means that Plaintiff "need not assert with specificity the extent of the contamination across all products, so long as [she] provide[s] sufficient details to plausibly allege that [*her*] products were contaminated." *Id.* (emphasis included). In making this determination, the Court "must accept as true all allegations in the complaint and all *reasonable* inferences that can be drawn therefrom[ ] and view them in the light most favorable to the plaintiff." *Id.* (citing *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)) (emphasis added).

Again, *Huertas* provides the Court with guidance as to the connection between particularity and representative testing. There, the plaintiffs relied, in part, on third-party testing "to establish they purchased contaminated products." *Id.* at 1178. Testing was not conducted on the products that the plaintiffs had purchased or possessed. *See id.* at 1178 n.16. Instead, thirteen samples of the defendant's products were tested. But, "[t]welve of these samples, *all with lot numbers beginning*

7

*TN*, contained detectable levels of benzene." *Id.* (emphasis added). The fact that the lot number was specified was significant, as "TN" was one of the lot numbers subject to the defendant's recall.[3] *See id.* at 1172. While the plaintiffs were not required to "show[ ] that *all* products in the recall were contaminated," *id.* at 1179 (emphasis included), the allegedly positive test results from this lot number provided a connection between the products that plaintiffs allegedly purchased and the plaintiffs' alleged economic injuries.

The Court does not read the *Huertas* opinion to set a blanket rule that *any* representative testing provides a basis for standing. The court "recognize[d] the inherent challenges in obtaining contamination data at the dismissal stage, as well as the relatively low burden set by notice pleading" and "the importance of assessing what testing results plausibly suggest, rather than applying arbitrary metrics to determine their significance." *Id.* at 1179 n.17. Still, plaintiffs in *Huertas* were able to allege a connection between *their* products and the alleged harm—the contamination—by way of a positive test for products with the same lot number as the products subject to the recall that they had purchased. In at least one the cases cited by Plaintiff in her briefing, this nexus is also present. *See Levy v. Hu Products LLC*, 23 Civ. 1381, 2024 WL 897495, at *1 (S.D.N.Y. Mar. 1, 2024) (where plaintiff alleged that she purchased and consumed various flavors of defendant's product multiple times in September 2022, and testing was done of the product, months earlier of "2-3 samples with at least two distinct lot codes of each model," which revealed presence of a contaminant).

---

[3] Also worth noting is the fact that the Third Circuit affirmed the district court's dismissal of several plaintiffs who failed to allege that they had purchased a product with a lot number subject to the recall for lack of standing. *See Huertas*, 120 F.4th at 1181. The court declined to indulge in an inference broad enough to assume "that all products sold during the recall window contained the specified prefixes, or that those prefixes dominated [the defendant's product] sales during that time frame." *Id.*

The other, out-of-circuit cases cited by the Third Circuit in *Huertas* likewise demonstrate that a nexus sufficient for particularity can be established when the contamination is *so* widespread that it could be reasonably inferred. *See In re Recalled Abbott Infant Formula Prod. Liab. Litig.*, 97 F.4th 525, 529 (7th Cir. 2024) ("Plaintiffs' claimed injury is also not particularized because they do not allege that any of the products they purchased were contaminated. Nor do plaintiffs plead facts suggesting that contamination of [defendant's] products was sufficiently widespread to plausibly affect any given unit of infant formula, including the ones they had purchased."); *see also John v. Whole Foods Market Grp., Inc.*, 858 F.3d 732, 737-38 (2d Cir. 2017) ("[A]ccording to the [ ] investigation, [Defendant's] packages of cheese and cupcakes were *systematically* and *routinely* mislabeled and overpriced, and [plaintiff] regularly purchased [products] over the relevant period. Taking these allegations as true and drawing all reasonable inferences in his favor, it is plausible that John overpaid for at least one product." (emphasis added)). Some of the other cases Plaintiff briefed follow this pattern as well. *See Bell v. Dave*, Civ. A. No. 21-11816, 2022 WL 2667017, at *5 (D.N.J. July 11, 2022) (where plaintiffs alleged "*every* bottle of [defendant's product] is mislabeled" (emphasis included)); *Kimca v. Sprout Foods, Inc.*, Civ. A. No. 21-12977, 2022 WL 1213488, at *1, 4 (D.N.J. Apr. 25, 2022) ("[P]laintiffs can establish standing using representative testing where they allege that *all* of the products sold by the defendant contain the alleged defect." (emphasis included).

Here, on the face of Plaintiff's Complaint, she is unable to overcome the low hurdles in place to establish particularity based on the theory of representative testing. Again, Plaintiff's Complaint alleges that "Defendant's Coal Tar Shampoo Products did in fact contain benzene. Testing, for instance, reveals that Defendant's Coal Tar Shampoo Products contain benzene between 5.64ppm and 10.30 ppm." ECF No. 1 at ¶ 21. Once again, the term "Coal Tar Shampoo

9

Products" includes at least three, separate products sold by Defendant. *See id.* at ¶ 1. Plaintiff only alleges with specificity that she purchased one of these items—the MG217 Psoriasis Medicated Conditioning 3% Coal Tar Shampoo. *Id.* at ¶ 6. Plaintiff's Complaint is incredibly vague as to the details surrounding the testing. She does not specify whether each, a combination of, just one, or some of the three of Defendant's products is included in this alleged test result. Plaintiff similarly does not allege when these tested products were acquired and whether the date of purchase could give rise to a reasonable inference that Plaintiff's products were similarly contaminated. Other indicia like lot numbers are not mentioned in Plaintiff's Complaint. Likewise, nothing in the Complaint indicates that the contamination was so widespread that the Court can make a reasonable inference that Plaintiff purchased contaminated products. The frequency in which the benzene was allegedly found in the testing samples is also not mentioned. None of this is mentioned to suggest that each of these characteristics would be necessary to establish the requisite particularity. However, Plaintiff's Complaint, as it currently stands, does not provide the requisite nexus between the alleged contamination and the particular products Plaintiff purchased—even with the admittedly lenient standard from which representative testing can be used to fulfill this requirement.

In sum, Plaintiff's broad allegation with regards to the testing of Defendant's products is so unspecified that it "stop[s] short of the line between possibility and plausibility," *Huertas*, 120 F.4th at 1181 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)), and does not "assure" this Court "above the speculative level" that the products she purchased were contaminated with benzene. *Id.* (quoting *Twombly*, 550 U.S. at 555). Plaintiff will be granted leave to amend her Complaint to address these deficiencies if she is able to do so. *See Thomas v. Advance Housing,*

*Inc.*, 440 F. App'x 86, 87 ("Leave to amend shall be freely given 'when justice so requires.'" (quoting Fed. R. Civ. P. 15)).

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge